# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 2:16 -116-JDL |
| | ) | |
| GARRETT G. BROSNAN | ) | |

## MR. BROSNAN'S MEMORANDUM IN AID OF SENTENCING

**COMES NOW** Garrett Brosnan, (hereinafter, "Mr. Brosnan"), by and through undersigned counsel, and respectfully submits this concise Memorandum in Aid of Sentencing in relation to the above-captioned criminal action.

Mr. Brosnan relies upon the underlying points and authorities in support of his position on sentencing, as well as such other foundation as may be presented at the forthcoming sentencing hearing or otherwise provided to the Court.

## INTRODUCTION

Striking a balance between the interests of an accused and those of the community presents an enormous challenge to a sentencing judge. Surely, "[a] judge has no more difficult duty nor awesome responsibility than the pronouncement of sentence in a criminal case." *State v. Tiernan*, 645 A.2d 482, 484 (R.I. 1984), quoting *State v. Crescenzo*, 332 A.2d 421, 433 (R.I. 1975). That is especially true where, as here, a court must make potentially dramatic factual, legal, and policy decisions regarding which of several possible sentencing paths would do justice to Mr. Brosnan and to the community.

Without making a sentencing recommendation to the Court, the Probation Office highlighted in its presentence report to the Court that the following factors may form a basis for a non-Guidelines sentence pursuant to 18 U.S.C. § 3553(a):

- Mr. Brosnan's success on pretrial release.

- The fact that Mr. Brosnan voluntarily sought and has continued in treatment geared towards those with sexual issues.

- Mr. Brosnan's steady employment history.

- Mr. Brosnan's supportive family.

- The absence of a criminal history.

- Mr. Brosnan's vulnerability in prison due to his prior employment as a police officer and the nature of the offense of conviction.

Regarding the issue of Mr. Brosnan's vulnerability, the Probation Office cited *Koon v. United States*, 518 U.S. 81 (1996), noting that the Supreme Court had affirmed the sentencing court's consideration of police officers' high susceptibility to abuse in prison as a basis for a downward departure from the Sentencing Guidelines. The Probation Office also pointed to *United States v. Parish*, 308 F.3d 1025 (9th Cir. 2002) for its approval of a sentencing court's consideration of the nature of the offense in combination with other factors that increase the susceptibility to abuse because such an approach would allow the sentencing court to consider all the circumstances of the crime and the defendant, and then to make an appropriate individualized determination of an appropriate sentence. Mr. Brosnan respectfully asks Court to adopt the Probation Office's analysis in those regards as part of its sentencing deliberations.

For those reasons and other considerations articulated below, Mr. Brosnan respectfully requests that the Court issue a sentence that varies from the Guidelines range. Specifically, Mr. Brosnan asks that the Court impose a term of probation, or several months of incarceration followed by home confinement (with work release and mental health treatment conditions), would be an appropriate sentencing disposition. The circumstances before the Court indicate that such an approach would achieve the specific

sentencing goals established by Congress, as well as the overarching objective of fashioning a sentence that is sufficient, but not greater than necessary, to do justice.

A sentence of probation would serve the very best interests of both the community and Mr. Brosnan because it would avoid potential harm due to his vulnerability in prison, perpetuate the remarkable rehabilitative progress that he has made thus far with the aid of his family and counselor, permit him to pursue his new occupation and function as a productive member of society, and recognize the collateral punitive consequences of his arrest and conviction that have already taken effect (and will endure indefinitely).  Alternatively, if the Court decides that a prison term is appropriate in this case, Mr. Brosnan respectfully requests that the Court impose a prison term of one year and a day.

## **DISCUSSION**

**Procedural Posture**. Mr. Brosnan, a 25-year-old first-offender with a previously unblemished record of public service as a police officer, is before the Court for sentencing as a result of having entered a guilty plea pursuant to a written plea agreement to a one-count Information charging him with attempted transfer of obscene material to an individual that he believed was an individual under the age of 16 years.[1]  In making his guilty plea, Mr. Brosnan agreed to waive any right to appeal the guilty plea and/or any other aspect of his conviction resulting from the plea.  Although the agreement did not provide an estimate of the sentence that he and the Government expect the Court to impose, the plea agreement reflects that the Government and Mr. Brosnan agreed that he preserved his right to appeal a sentence of imprisonment for more than 15 months.

---

[1] The purported 14-year-old female was in actuality an adult federal law enforcement officer operating undercover who initiated the contacts with Mr. Brosnan on Kik Messenger, an electronic communications platform.

3

**Factual Context of the Case**. Without diminishing Mr. Brosnan's acceptance of responsibility, it is incumbent upon defense counsel to briefly establish the factual contours of this matter. Mr. Brosnan attended a private military college with a predominantly male student population, with few opportunities for socializing with women, or for socializing in general. During that period, he and other male students experimented with social media, including platforms for communications with women that included exchanges of messages, web-camera video, and still images, some of which were sexualized. He left the military college without a disciplinary record, and one course short of qualifying for his bachelor's degree.[2] Mr. Brosnan became a police officer (in 2013), and he served in that capacity for almost two years with every indication of a successful career in law enforcement.

Unfortunately, after college Mr. Brosnan continued socializing on electronic media in a way that was like what he had done while in college, especially during stressful periods, and those episodes were sometimes characterized by off-duty alcohol-use. In general, his communications were with age-appropriate females, which was not unlawful. He was not focused on creating online relationships with females under the age of 16 years, and the behavior that was unearthed by the Government's investigation was unusual for him. At the same rate, he acknowledges that his communications with the minor female in Arizona were inappropriate. It is also noteworthy that the unlawful conduct that led to his arrest emerged when *an undercover agent initiated communications with him* on an online chat site and not the result of his search for online contacts with minor females. Regardless, Mr. Brosnan accepts full responsibility—and

---

[2] Mr. Brosnan intends to enroll in a biology course as soon as his current circumstances will allow, which will permit him to take the last step in the degree program and to receive his bachelor's degree in the near future.

4

the consequences—for his conduct once the undercover agent(s) made a connection with him and they began communicating.

**Acceptance of Responsibility**. Mr. Brosnan candidly described the genesis, nature, and full extent of his behavior to the Probation Officer who prepared the presentence report that has been submitted to the Court. By way of his guilty plea and his cooperation with the Probation Officer, Mr. Brosnan unhesitatingly acknowledged that his conduct was inexcusable and unlawful. While he knows that the Court will take his explanation for what happened into account during the sentencing process, Mr. Brosnan also recognizes that his explanation does not by any means excuse his conduct.

Following his arrest, Mr. Brosnan emphatically demonstrated a genuine acceptance of responsibility for the offense conduct. Indeed, he has taken earnest steps to resolve issues underlying his behavior. At the same rate, while the evaluation and treatment process may have surfaced an *explanation* for his conduct, Mr. Brosnan recognizes that there is no *excuse* for his behavior. Importantly, his acceptance of responsibility began immediately. He waived his rights to disciplinary due process and resigned his position as a police officer, simultaneously taking steps to surrender his State certification as a law enforcement officer.[3] He voluntarily sought and received an evaluation from a mental health counselor. As of this writing, Mr. Brosnan continues to follow the counselor's treatment recommendations, and he attends weekly counseling sessions, a total of 13 sessions as of the time of his report to the Probation Office. It is significant for sentencing purposes that the counselor has reported to the Probation Office that Mr. Brosnan did <u>not</u> have <u>any</u> mental health diagnoses, and that there were <u>no</u> sex

---

[3] The Board of Trustees for the Maine Criminal Justice Academy declined to accept the surrender of his credentials. Instead, the Board will apparently revoke the certification after the criminal prosecution has been completed.

5

offense-specific diagnoses assessed to him.  Moreover, the counselor reported that he had also determined that Mr. Brosnan was <u>not</u> sexually-oriented toward children.

At the earliest stage of these proceedings (and after carefully considering potential legal defenses), Mr. Brosnan notified the Government that he would acknowledge his misconduct by pleading guilty and that he would accept the consequences of his conduct.  Mr. Brosnan's focus was <u>not</u> on *denying* the allegations against him and requiring the Government to prove its case.  Rather, he *admitted* his misconduct and manifested an immediate acceptance of responsibility, conserving investigative, prosecutorial, and judicial resources.  Not only did he accept the consequences of his conduct, he immediately began doing what was necessary to his rehabilitation so that he could once again becoming a productive member of the community.

**<u>Specific Deterrence Considerations</u>**. As for *specific deterrence* considerations, Mr. Brosnan recognizes that the course of his life has changed because of the poor decisions that he made in relation to this matter, but—perhaps incongruously—he is grateful for the interruption.  His arrest put an end to what may have otherwise become a spiral leading to more bad behavior.  Now, he is working with a mental health professional.  He is grappling with and resolving the issues that led to the offense conduct, and he is making good progress.  After his arrest, the Court, without objection from the Government, released Mr. Brosnan back to the community pending the disposition of the case, and he has fulfilled every condition of release imposed by the Court.  In the meantime, with full knowledge of Mr. Brosnan's case, an employer with confidence in Mr. Brosnan's capacity for rehabilitation has given him a temporary job with prospects for a career position—and he has performed well.  Mr. Brosnan has

charted a new course, and there is every indication that he will live the remainder of his life as a rehabilitated, productive, and law-abiding member of society.

The record in this case unmistakably indicates that there is no likelihood that Mr. Brosnan would reoffend, which is a critically important part of the sentencing calculus. Mr. Brosnan was released on bail conditions following his initial appearance. There have been no complaints about any violations of his conditions of release, and no reports of additional criminal conduct. Of his own volition, Mr. Brosnan sought and obtained an evaluation and related therapy in relation to the circumstances surrounding his offense conduct from a counselor recommended by the Probation Office. Then, without objection from either the Probation Office or the United States Attorney's Office, the Court granted Mr. Brosnan's motion to enlarge his conditions of release to include continued evaluation and treatment during the period of release. Because of his decision to obtain an evaluation and to pursue treatment, Mr. Brosnan has made great progress toward a resolution of the factors that led to his offense conduct. The results indicate that Mr. Brosnan does not pose a risk to the community and that his reinvolvement with the offense behavior is unlikely. There is little, if any, doubt that he would live a law-abiding life in his new occupation.

**General Deterrence Considerations**. There is no doubt that prosecution of this offense serves as a *general deterrent* to individuals inclined toward this sort of conduct. Indeed, the publicity associated with this matter has advertised to individuals that may be tempted to commit similar misconduct that the Government is actively investigating and prosecuting this type of offense, and most importantly that courts will take these matters seriously. Indeed, it is readily evident that judicially-imposed sanctions, as well as the

natural consequences, following a successful prosecution would be potentially substantial—and, particularly so in Mr. Brosnan's case.

**Collateral Consequence Considerations**. The permanent collateral consequences stemming from the investigation, prosecution, and conviction in this case have been—and will continue to be—profound, and that form of punishment will serve the specific and general deterrence goals that motivate those who would seek an enhanced sentence for Mr. Brosnan because of his status as a police officer.

Specifically, his employment as a police officer had no connection whatsoever to the offense committed by Mr. Brosnan. In fact, it is evident that the misconduct occurred while he was off duty. And, the record demonstrates that he did not identify himself as a police officer in any of the online communications that are pertinent to the case. Thus, there is no relevant employment-related conduct that would warrant treatment as an aggravating factor and the circumstances do not render Mr. Brosnan's police occupation problematic in the context of any of the seven factors applicable to sentencing pursuant to Section 3553(a). Rather, Mr. Brosnan's performance as a police officer was commendable. He stepped into harm's way each day that he put on his uniform and began his patrol, dutifully protecting his community. At the same rate, he realizes that his off-duty conduct in this situation was not commendable, but he has taken steps to identify and remedy the genesis of the problem.

The collateral consequences affecting Mr. Brosnan are unmistakable and worthy of the Court's attention when shaping an appropriate sentence in this case. While there is a circuit split regarding the applicability of collateral consequences to sentencing

determinations, and the Supreme Court has not addressed the issue,[4] such considerations are essential to the imposition of a fair sentences in some cases, like this case. For example, the Second Circuit[5] reviewed a District Court's sentencing decision that partially considered the fact that the "conviction made it doubtful that the defendant could pursue his career as an academic or translator, and therefore that the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant." *Nesbeth* at *7 (quoting *United States v. Stewart*, 590 F.3d 93, 141 (2nd Cir. 2009)). The Second Circuit affirmed the District Court, reasoning that the District Court's analysis was "required by section 3553(a)," indicating that "[i]t is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence.'" *Nesbeth* at *7 (quoting *Stewart*, at 141-142). There is no doubt that the *Nesbeth* Court's methodology for devising a "just punishment" in the context of collateral consequences applies to this situation.

Here, the collateral consequences of Mr. Brosnan's behavior began immediately, well before any Court-imposed sentence. He lost the opportunity to practice his chosen profession, and he will never regain that ability. For a police officer, banishment is a crushing consequence and his police colleagues predictably shunned him, and that abandonment will last forever. The infamy generated by widespread publicity ruined his reputation in the community, and rebuilding his reputation, if it can be accomplished, will require years of demonstrated good conduct. The federal felony conviction that will

---

[4] *United States v. Nesbeth*, ___ F.Supp.3d ___ (EDNY May 24, 2016), 2016 WL 3022073, at *7 (citing *United States v. Morgan*, 635 Fed, Appx. 423, ____, 2015 WL 6773933, at *20 (10th Cir. Nov. 6, 2015).

[5] Defense counsel did not identify a relevant First Circuit case,

9

result from these proceedings is indelible, and it will certainly have a far-reaching impact on Mr. Brosnan's future, especially his employability. Thus, in terms of punishment, Mr. Brosnan has felt the consequences of his misconduct, and many of those consequences will be long-lasting. These profound collateral consequences, against the backdrop of *Stewart*, are legitimate sentencing considerations in Mr. Brosnan's case.

**Vulnerability in Prison**. As recognized by the United States Supreme Court in *Koon*, it is inevitable that Mr. Brosnan's former status as a police officer would render him highly susceptible to abuse in prison. Furthermore, his conviction of a sexually-related offense would increase that susceptibility to abuse during imprisonment, as reflected in *United States v. Parish*. Those considerations, particularly when combined with the other positive circumstances existing in Mr. Brosnan's case, support his request for a probationary sentence or a diminished term of incarceration.

**Final Analysis**. The jurisprudential barometer for gauging a just sentence is not calibrated by the numbers of months or years imposed by a prison sentence. Instead, to achieve the seven goals mandated by Section 3553(a), the calculus must revolve around the impact of the sentence fashioned by the sentencing judge on the defendant and the community. Certainly, a sentence resulting from a criminal conviction must have components of punishment and restitution in many cases, but it would be inhumane to punish a convicted individual by placing him in an environment with an extremely high potential for abuse, a likely prospect that even the United States Supreme Court recognizes. Yet, the intent of Congress, and the community's hope, is that the elements of a just sentence would include specific and general deterrence, sustainable rehabilitation, and conversion of offenders to productive members of the community.

Simply put, prison is for incorrigible and dangerous offenders from whom the community must be protected. But prison is no place for an individual that has accepted responsibility for his misconduct, demonstrated his sustainable rehabilitation and the absence of any propensity for future criminal conduct, and has been punished by substantial and long-lasting collateral consequences.

Mr. Brosnan's arrest and prosecution has resulted in wide-ranging and enduring community sanctions against him, regardless of whatever sentence is imposed by this Court. He lost his job in public service, he is in the process of decertification as a police officer, and he has no hope of ever engaging in his chosen profession again. While some would say that it would be very difficult for an individual in Mr. Brosnan's position to obtain meaningful employment of any kind, he found a job that may lead to a new career. Surely, his current employer has given him what may be a once-in-a-lifetime opportunity to redeem himself.

A probationary sentence, or several months of incarceration followed by home confinement (with work release and mental health treatment conditions) would allow Mr. Brosnan to continue the course of evaluation and treatment that has been so productive thus far, and permit the rehabilitative process to occur in an environment that would perpetuate his rehabilitation by allowing him to continue his current employment with the prospect of earning a career position, and to receive the guidance and support of his family during that process.

## **CONCLUSION**

WHEREFORE, Mr. Brosnan respectfully requests that this Court impose a probationary sentence in this matter, the basis for which is evident from the circumstances underlying the conviction in Mr. Brosnan's case.

HOWEVER, if the Court decides to impose a sentence of incarceration, Mr. Brosnan respectfully requests that the Court impose either several months of incarceration followed by home confinement (with work release and mental health treatment conditions), or a prison sentence of one year and a day.

FURTHERMORE, if the Court decides to impose a sentence of incarceration, Mr. Brosnan respectfully requests that the Court allow Mr. Brosnan to self-report to the facility designated by the United States Bureau of Prisons.

FINALLY, Mr. Brosnan respectfully requests that the Court accept the Probation Office's determination of his financial circumstances and impose only a nominal fine if the Court deems that a fine is appropriate under those circumstances.

Dated: January 4, 2017

/s/ Michael A. Cunniff_____
Michael A. Cunniff
Attorney for Garrett Brosnan

McCloskey, Mina & Cunniff, LLC
12 City Center
Portland, ME 04101
Telephone: (207) 772-6805

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 2:16-116-JDL |
| | ) | |
| GARRETT G. BROSNAN | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed Mr. Brosnan's Memorandum in Aid of Sentencing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to the following counsel of record in the above-captioned matter:

> Craig M. Wolff, Esq.
> Assistant United States Attorney
> United States Attorney's Office
> 100 Middle Street, 6th Floor
> Portland, ME 04101

Dated: January 4, 2017.

> /s/ Michael A. Cunniff
> Michael A. Cunniff
> mcunniff@lawmmc.com
> Attorney for Garrett Brosnan

McCloskey, Mina & Cunniff, LLC
12 City Center
Portland, ME 04101
Telephone: (207) 772-6805